UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KENNETH P. PETERS,**

      **Plaintiff,**

                                                Civil Action 2:11-cv-00083
v.                                                Magistrate Judge E.A. Preston Deavers

**MONROE TOWNSHIP BOARD OF
TRUSTEES,** *et al.***,**

      **Defendants.**

## OPINION AND ORDER

### I.  INTRODUCTION

      This matter is before the Court for consideration of the Motion of Defendant WorkHealth North[1] (hereinafter "WorkHealth") to Dismiss Plaintiff's First Amended Complaint (ECF No. 10) and Plaintiffs' Motion for Leave to File Amended Complaint, Instanter (ECF No. 12).  In their First Amended Complaint, Plaintiffs, Kenneth P. Peters ("Peters") and William D. VanGundy ("VanGundy"), purport to bring claims against WorkHealth for negligence and tortious interference with a business relationship.  WorkHealth moves for dismissal, maintaining that Plaintiff has failed to state a claim against it upon which relief can be granted.  Plaintiffs oppose dismissal and also request that the Court allow them to file a proposed Second Amended Complaint in order to raise a third-party beneficiary contract claim.  WorkHealth maintains that allowing Plaintiffs leave to file their proposed Second Amended Complaint would be futile because it also fails to state a claim upon which relief can be granted.

---

      [1] Plaintiffs have named "WorkHealth North" as a Defendant in this case.  According to this Defendant, "WorkHealth North" is a fictitious name and is not a legal entity under Ohio law. (Mot. Dismiss 1 n.1, ECF No. 10).

For the reasons that follow, WorkHealth's Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 10) is **GRANTED** and Plaintiffs' Motion for Leave to File Amended Complaint (ECF No. 12) to allow Plaintiffs to bring a third-party beneficiary contract claim is also **GRANTED**.

## II.  BACKGROUND

A.  Complaint

Plaintiffs bring this action against Defendants WorkHealth; Monroe Township Board of Trustees (hereinafter the "Trustees"); and Dudley H. Wright, Fire Chief of the Monroe Township Fire Department.[2]  Plaintiffs originally filed their action in the Delaware County Court of Common Pleas.  Defendants subsequently removed the case to this Court.[3]  On February 3, 2011, WorkHealth moved to dismiss Plaintiffs' original Complaint for failure to state a claim.

Plaintiffs are firefighters who work for the Monroe Township Fire Department ("Fire Department").  As part of their employment, the Fire Department requires Plaintiffs to receive medical clearance, indicating that they are healthy enough to safely perform their duties as firefighters.  Consequently, in December 2008 Plaintiffs underwent fit-for-duty evaluations, which included physical examinations and stress tests.  WorkHealth, an occupational health company, conducted these fitness evaluations pursuant to a contract with the Trustees.  Plaintiffs maintain that WorkHealth arbitrarily lowered their test results and applied improper standards

---

[2] Defendant Trustees and Wright did not move to dismiss Plaintiff's first Complaint, and Plaintiffs' Amended Complaint and proposed Second Amended Complaint modify only Plaintiffs' claims against Defendant WorkHealth.

[3] Although their claims are not the subject of the instant Motion, Plaintiffs maintain that Defendants Trustees and Wright violated their Fourteenth Amendment due process rights. (Compl. ¶¶ 21, 35.)

2

that resulted in lower test scores. As a result of these test scores, Plaintiffs assert that WorkHealth referred Peters to his primary care physician for assessment of cardiac risk factors and informed Defendant Wright of Peters' test results. Furthermore, Plaintiffs contend that WorkHealth recommended that the Fire Department limit VanGundy to less physically demanding tasks and further recommended that VanGundy begin a conditioning program.

Plaintiffs maintain that as a consequence of these test results, the Fire Department suspended them from employment, resulting in a loss of wages and other damages. Plaintiffs further contend that WorkHealth was reckless and indifferent to their rights, causing them severe emotional distress and giving rise to their claim for exemplary damages.

B.     Amended Complaint

In response to WorkHealth's original Motion to Dismiss, Plaintiffs filed an Amended Complaint. (Am. Compl., ECF No. 8.) The Amended Complaint begins by incorporating all the allegations of the first Complaint. Plaintiffs then clarify that WorkHealth was required to perform their physical examinations because of a contractual relationship between WorkHealth and the Trustees. According to the first Amended Complaint, because of this contract, "WorkHealth North owed a duty to Plaintiff[s] to accurately, fairly, and properly examine [them] . . . ." (*Id.* at ¶¶ 5, 22.)

Additionally, Plaintiffs maintain in the first Amended Complaint that WorkHealth tortiously interfered with the business relationship between Plaintiffs, the Trustees, and the Fire Department. Specifically, Plaintiffs contend that WorkHealth was aware of their employment relationships with the Trustees and the Fire Department. According to Plaintiffs, through either intentional or reckless behavior in reporting the relevant test scores, WorkHealth interfered with their employment relationships, resulting in their suspension and damages.

C.    <u>Proposed Second Amended Complaint</u>

Plaintiffs moved to amend their Complaint on March 11, 2011, in order to plead a third-party beneficiary contract claim. (Mot. Am., ECF No. 12.) They attached their proposed Second Amended Complaint to their Motion. (Second Am. Compl., ECF No. 12-1.) The Second Amended Complaint incorporates the allegations of the first two Complaints. Within the Second Amended Complaint, Plaintiffs once again maintain that, as a result of its contract with Trustees, WorkHealth owed Plaintiffs a duty to accurately and fairly examine them for the purposes of their employment with the Fire Department. Plaintiffs then maintain that they were third-party beneficiaries of the contract between WorkHealth and the Trustees. Specifically, Plaintiffs contend that it was the intent of the parties to benefit Plaintiffs and give them enforceable rights. According to Plaintiffs, WorkHealth's actions constituted breach of the contract between the Trustees and WorkHealth, resulting in damages to Plaintiffs. WorkHealth opposes Plaintiffs' Motion to Amend on the grounds that the claims raised in it are futile.

### III. STANDARDS OF REVIEW

A.    <u>Federal Rule of Civil Procedure 12(b)(6)</u>

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, a complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Facial plausibility is established "when the plaintiff pleads

4

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In considering whether this facial plausibility standard is met, a Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Iqbal*, 129 S.Ct. at 1949.

B. <u>Federal Rule of Procedure 15(a)</u>

Pursuant to the Federal Rules of Civil Procedure, the Court should freely grant a party leave to amend his or her pleadings when justice so requires. Fed. R. Civ. P. 15(a). Rule 15(a) sets forth "a 'liberal policy of permitting amendments to ensure the determination of claims on their merits.'" *Oleson v. United States*, 27 F. App'x 566, 569 (6th Cir. 2001) (quoting *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987)). As the United States Court of Appeals for the Sixth Circuit has noted, "[f]actors that may affect [a Rule 15(a)] determination include undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of the amendment." *Seals v. General Motors Corp.*, 546 F.3d 766, 770 (6th Cir. 2008) (citing *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001)). "A motion for leave to amend may be denied for futility 'if the court concludes that the pleading as amended could not withstand a motion to dismiss.'" *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) (quoting *Martin v. Assoc. Truck Lines, Inc.*, 801 F.2d 246, 249 (6th Cir. 1986)); *see also Frey v. Novartis Pharm. Corp.*, 642 F. Supp. 2d 787, 796 (S.D. Ohio 2009) (applying

the *Twombly* standard in deciding that amendment to a complaint would be futile).

## IV.  ANALYSIS

WorkHealth contends that both the original Complaint and first Amended Complaint fail to state claims upon which the Court may grant relief.  Moreover, WorkHealth maintains that allowing Plaintiffs to file their proposed Second Amended Complaint would be futile because it also fails to state a claim.  Accordingly, in analyzing Plaintiffs' claims, the undersigned will consider the allegations within Plaintiffs' original Complaint, First Amended Complaint, and their proposed Second Amended Complaint.  The undersigned will address separately Plaintiffs' claims for negligence; tortuous interference with an employment relationship; intentional or negligent infliction of emotional distress; breach of contract pursuant to a third-party beneficiary theory; and punitive damages.

A.   Negligence

Within their various Complaints, Plaintiffs attempt to state claims against WorkHealth for negligence.  In order to prove a claim for negligence, Plaintiffs must prove each of the following elements: "(1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) injury that is the proximate cause of the defendant's breach."  *Wallace v. Ohio Dep't of Commerce*, 96 Ohio St. 3d 266, 274 (Ohio 2002).

Under Ohio law, however, the economic-loss doctrine applies to negligence claims. *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 414 (Ohio 2005).  As the Supreme Court of Ohio has explained, "'[t]he well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.'"  *Id.* (quoting *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 44 (Ohio 2005)).  The *Corporex* Court further

explained as follows:

> This rule stems from the recognition of a balance between tort law, designed to redress losses suffered by breach of a duty imposed by law to protect societal interests, and contract law, which holds that parties to a commercial transaction should remain free to govern their own affairs. Tort law is not designed . . . to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts.

*Id.* (internal citations and quotations omitted). Moreover, the Supreme Court of Ohio has held that outside of contract law "there is no . . . duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things." *Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*, 54 Ohio St.3d 1, 3 (Ohio 1990).

In 2008, the United States Court of Appeals for the Sixth Circuit held that the economic-loss doctrine barred a negligence claim. *Sagraves v. Lab One, Inc.*, 316 F. App'x 366, 369 (6th Cir. 2008). *Savgraves* involved a negligence action against a laboratory that the plaintiff's employer hired to provide drug testing services. *Id.* at 368. Through these services, the plaintiff underwent a random drug test, which was positive for illegal substances, ultimately leading to his termination. *Id.* With regards to his negligence action, the Court held that the plaintiff did not satisfy the requisite duty of care because he failed to allege that the laboratory caused him any physical damage. *Id.* at 369. Applying Ohio law, the Court reasoned that "[t]he economic-loss rule [] bars recovery in negligence when loss does not arise from any physical damage." *Id.*

In this case, Plaintiffs have failed to plead sufficient facts to establish that WorkHealth owed them a duty for the purposes of their negligence claim. Plaintiffs maintain that

7

WorkHealth owed them a duty "to accurately, fairly, and properly examine [them] for purposes of continued employment with the Monroe Township Fire Department."  (Am. Compl. ¶¶ 5, 22, ECF No. 8).  Plaintiffs explicitly recognize that this alleged duty was a product of "the contractual relationship between the Trustees and WorkHealth" as opposed to a duty imposed by law.  (*Id.*)  Furthermore, much like the plaintiff in *Savgraves*, Plaintiffs have pled no facts to suggest that WorkHealth caused any physical injury or property damage.  Rather, Plaintiffs maintain that WorkHealth's actions in reporting their test scores resulted in economic harms, specifically, suspension from employment and loss of wages.[4]  Under these circumstances, the economic loss doctrine bars Plaintiffs' negligence claims against WorkHealth.  WorkHealth's Motion is, therefore, **GRANTED** as to Plaintiffs' negligence claims.

B.      Tortious Interference with an Employment Relationship

In addition to negligence, Plaintiffs maintain that WorkHealth tortiously interfered with their business relationship with the Trustees and Fire Department.  Under Ohio law, tortious interference with a business relationship requires proof of the following four elements: "['](1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom.'" *DiPasquale v. Costas*, 186 Ohio App. 3d 121, 148 (Ohio Ct. App. 2010) (quoting *Wolf v.*

---

[4] Within their original Complaint, Plaintiffs do allege, in cursory fashion, that they suffered "severe emotional distress" as a result of WorkHealth's actions.  (Compl. ¶ 42, ECF No. 2.)  Although the Court has not found any legal authority in Ohio directly reaching the issue, it finds that this unsubstantiated allegation is not enough to make the economic-loss doctrine inapplicable.  As other federal courts have held, "if Plaintiff is allowed to defeat the economic loss doctrine by seeking compensation for emotional distress, this would swallow the doctrine." *Knight v. Horace Mann Ins. Co.*, No. 08-10405, 2010 WL 1257332, at *3 (E.D. Mich. Mar. 30, 2010).  After all, any significant economic loss will likely result in some level of emotional distress.  The Court will consider separately below whether Plaintiffs have adequately stated claims for intentional or negligent infliction of emotional distress.

8

*McCullough–Hyde Memorial Hosp.*, 67 Ohio App. 3d 349, 355 (Ohio Ct. App. 1990)). Ohio law, however, recognizes a separate and distinct tort for interference with an employment relationship. *Dryden v. Cincinnati Bell Tel. Co.*, 135 Ohio App. 3d 394, 400 (Ohio Ct. App. 1999). As opposed to tortious interference with a business relationship, to succeed on a claim for interference with an employment relationship, a plaintiff must establish "either wanton or malicious behavior." *Id.*; *see also Courie v. ALCOA*, 162 Ohio App.3d 133, 142–43 (Ohio Ct. App. 2005) ("[T]he general rule in Ohio is that . . . one who maliciously or wantonly procures the discharge of an employee is liable to the employee in an action for damages.") (internal quotation omitted); *cf. Preston v. Murty*, 32 Ohio St. 3d 334, 336 (Ohio 1987) (defining malice as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."); *Fabrey v. McDonald Vill. Police Dept.*, 70 Ohio St. 3d 351, 356 (Ohio 1994) (describing wanton misconduct as "the failure to exercise any care whatsoever" and noting that negligence is not enough unless accompanied by "a disposition to perversity").

Moreover, "the right of noninterference in an employment relationship is limited." *Contadino v. Tilow*, 68 Ohio App.3d 463, 467 (Ohio Ct. App. 1990). Specifically, "[t]here are those whose position vis-a-vis the employee and the employer entitles them to intrude upon the employment relationship." *Id.* Consequently, an action for interference with an employment relationship only extends to "outsiders" to the employment relationship "who maliciously interfere with another's employment . . . ." *Hatton v. Interim Health Care of Columbus, Inc.*, No. 06AP-828, 2007 WL 902176, at *6 (Ohio Ct. App. Mar. 27, 2007) (citing *Anderson v. Minter*, 32 Ohio St. 2d 207, 213 (Ohio 1972)). In considering who is an outsider, Ohio Courts

have held, "[a] person in a supervisory capacity or other position of authority over the employee cannot be sued for interfering with the employment relationship that it is his duty to monitor, supervise, or enforce." *Smiddy v. Kinko's, Inc.*, No. C-020222, 2003 WL 203576, at *3 (Ohio Ct. App. Jan. 31, 2003). Furthermore, the Supreme Court of Ohio has held that "[w]here . . . the act complained of is within the scope of a defendant's duties, a cause of action . . . does not lie." *Anderson*, 32 Ohio St. 2d at 213. This is true even when a defendant's conduct is malicious. *Id.* ("Malice makes a bad case worse, but does not make wrong that which is lawful.") (internal citation and quotation omitted).

Here, although Plaintiffs label their cause of action as tortious interference with a business relationship, the facts as they pled them make clear that their claim is actually for interference with their employment relationships. Specifically, Plaintiffs maintain that WorkHealth, through its reporting of lowered test results, improperly interfered with their employment relationships with the Fire Department, ultimately resulting in their suspension.

Plaintiffs, however, have failed to plead sufficient facts to establish a claim for tortious interference with an employment relationship. First, the facts indicate that WorkHealth was an agent of the Trustees when it performed the acts in question. Plaintiffs are employees of the Monroe Township Fire Department, and in turn, the Monroe Township Trustees. As a term of their employment, the Trustees required Plaintiffs to receive medical clearance through fitness evaluations. Plaintiffs themselves acknowledge that the Trustees contracted with WorkHealth, giving Workhealth the authority to administer Plaintiffs' fitness tests. WorkHealth, therefore, had a contractual duty to perform the tests and, consequently, report the results. Accordingly, at least to the extent it had a duty to perform Plaintiffs' examinations, WorkHealth was not an outsider to Plaintiffs' employment relationship. *Cf. Hall v. United Labs, Inc.*, 31 F. Supp. 2d

10

1039, 1043 (N.D. Ohio 1998) (holding that doctor and laboratory who were hired to analyze employee drug tests "were privileged to intervene in the employer-employee relationship"); *Kirk v. Shaw Environmental, Inc.*, No. 1:09-cv-1405, 2010 WL 1387887, at *7 (N.D. Ohio Mar. 31, 2010) ("Further, employees' claims for tortious interference against officers or other supervisory agents of employers must fail because 'there is no third party who induced the breach. The agents are considered the same as the actual employer.'") (quoting *Fitzgerald v. Roadway Express, Inc.*, 262 F.Supp.2d 849, 860 (N.D. Ohio 2003)).  Furthermore, the acts of which Plaintiffs complain, specifically, the administration of their fitness test and ultimate reporting of their test results, were the very acts the Trustees hired WorkHealth to perform.  Accordingly, even assuming WorkHealth acted maliciously in reporting Plaintiffs' results, it is not liable for tortious interference with an employment relationship.

     Second, Plaintiffs have failed to plead sufficient facts for the Court to reasonably infer that WorkHealth's actions were malicious or wanton.  As noted above, for the purposes of toritious interference with an employment relationship, a plaintiff must establish that a defendant acted with a malicious or wanton state of mind.  The Court holds pleadings concerning state of mind to the same general facial plausibility standard outlined in *Iqbal* and *Twombly*.  *See Iqbal*, 129 S.Ct. at 1954 (suggesting that pleadings as to state of mind are subject to the general pleading requirements of Rule 8); *see also Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009) (requiring that "pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind"); *Bourne v. Stewart Title Guar. Co.*, No. 09-cv-00270, 2011 WL 635304, at *3 (D.N.H. Feb. 16, 2011) ("[A]llegations of intent must satisfy the above-described plausibility standard to survive a motion to dismiss.").

11

In this case, Plaintiffs' claims are based on their assertion that WorkHealth lowered and/or applied improper standards to their physical examination test scores. Plaintiffs provide no further detail as to how the lowering of test results actually occurred. In various vague statements in their three Complaints, Plaintiffs label WorkHealth's behavior as arbitrary, reckless, indifferent, and intentional. Outside of these conclusory labels regarding state of mind, however, Plaintiffs provide no facts from which the Court can conclude that WorkHealth's actions in lowering their test results were either malicious or wanton. From the facts pled, the Court cannot infer that WorkHealth harbored ill will towards Plaintiffs or was conducting its examinations with the type of disregard or perversity typically associated with wanton or malicious states of mind. Furthermore, the underlying acts Plaintiffs allege, i.e., the lowering of test scores and application of improper standards, do not in and of themselves create a reasonable inference of malicious or wanton behavior. Rather, excluding the conclusory labels regarding Workhealth's purported state of mind, it seems just as likely, if not more probable, that the lower tests scores were the result of a mistake, error, or other misunderstanding, if, in fact, the fitness scores were lower. Under these circumstances, the factual pleadings in this case are not enough for the Court to reasonable infer that WorkHealth's conduct was either malicious or wanton conduct. WorkHealth's Motion to Dismiss Plaintiff's tortious interference claim is, accordingly, **GRANTED**.

C.  Intentional or Negligent Infliction of Emotional Distress

In their original Complaint, Plaintiffs state that WorkHealth's conduct caused them "to suffer severe emotional distress . . . ." (Compl. ¶ 42.) In their subsequent complaints and briefing, Plaintiffs have not clarified whether this statement in their pleading is an attempt to bring a cause of action for emotional distress.

Even assuming Plaintiffs are attempting to bring such a claim, they have failed to plead sufficient facts to support it. Although Ohio recognizes causes of action for emotional distress, such claims require emotional disturbance of an extremely serious nature. *Banford v. Aldrich Chem. Co., Inc.*, 126 Ohio St.3d 210, 216 (Ohio 2010) (holding the emotional injury associated with either intentional or negligent infliction of emotional distress "must be both severe and debilitating"). In this case, the Court need not accept Plaintiff's conclusory allegations that they suffered "severe emotional distress." Although being suspended from employment is likely to cause some level of distress, the Court cannot reasonably infer, at least from the current pleadings, that Plaintiffs emotional injury rose to the necessary level of hardship. *Cf. Cooper v. Ernst*, No. 1:10–cv–271, 2011 WL 1897441, at *13 (S.D. Ohio Apr. 13, 2011) (holding that being chased by a police dog was not sufficient to allow an inference of serious emotional distress). WorkHealth's Motion to Dismiss this claim is **GRANTED**.

D. <u>Third-Party Beneficiary to a Contract and Motion to Amend Complaint</u>

In requesting leave to file their proposed Second Amended Complaint, Plaintiffs seek to add a third-party beneficiary contract claim. WorkHealth opposes Plaintiff's Motion for Leave to file the Second Amended Complaint and asserts that the third-party beneficiary claim is futile.

In order for a third party to have enforceable rights under a contract, the third party must be an intended beneficiary, and not merely an incidental beneficiary. *Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St. 3d 36, 40 (Ohio 1988). In *Hill*, the Supreme Court of Ohio adopted the test under the Restatement (Second) for determining when a party is an intended beneficiary of a contract between two other parties. *Id.* The Restatement specifically provides:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

13

>> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302 (1981).  It is not enough for a proposed beneficiary to simply benefit in some way from the performance of a contract; rather, that performance "must also satisfy a duty owed by the promisee to the beneficiary." *Hill*, 36 Ohio St. 3d at 40.

The Court concludes that Plaintiffs have satisfied the pleading requirements for their third-party beneficiary contract claim such that the Amended Complaint is not futile.  As part of their employment as firefighters for Monroe Township, Plaintiffs were required to undergo physical examination and testing.  Plaintiffs assert that the Trustees and WorkHealth formed a contract, requiring WorkHealth to administer physical examinations to Plaintiffs.  Plaintiffs maintain that this contract created a duty, which WorkHealth owed to Plaintiffs, "to accurately, fairly, and properly examine Plaintiffs for the purposes of their continued employment . . . ." (Second Am. Compl. ¶ 6, ECF no. 12-1.)  Consequently, Plaintiffs maintain the Trustees intended to benefit them by ensuring that they would be able to continue performing their jobs.  Put another way, Plaintiffs contend that the Trustees intended to confer the benefit of accurately reporting the results of fitness evaluations upon Plaintiffs in order that they could keep their jobs.  Plaintiffs contend that WorkHealth breached that duty by improperly testing them and reporting inaccurate results to the Trustees, ultimately leading to their suspension.  Assuming these facts are true, as the Court must, and most importantly that the contract did create a duty on the part of WorkHealth to Plaintiffs, Plaintiffs would be entitled to relief as a third-party beneficiaries.  To the extent WorkHealth maintains that the contract created no such duty, this factual dispute may

not be resolved at this stage in the proceedings.

For these reasons, Plaintiffs' Motion to Amend their Complaint is **GRANTED**.

E.      Punitive Damages

Finally, as WorkHealth notes in briefing, Plaintiff's appear to be seeking punitive damages. Under Ohio law "no civil action may be maintained simply for punitive damages." *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 650 (Ohio 1994). "Rather, punitive damages are awarded as a mere incident of the cause of action in which they are sought." *Id.* Furthermore, "under Ohio law punitive damages are generally not recoverable in an action for breach of contract." *Mabry-Wright v. Zlotnik*, 165 Ohio App.3d 1, 7 (Ohio Ct. App. 2005). Here, the Court finds that Plaintiff has failed to state a claims for negligence, tortious interference with an employment relationship, and intentional or negligent infliction of emotional distress as these claims relate to WorkHealth. Plaintiff's only remaining claim is based on a third-party beneficiary contract theory. Accordingly, to the extent Plaintiffs seek punitive damages in connection with their claims against WorkHealth, they are not entitled to such relief.

## V.  CONCLUSION

Based on the foregoing analysis, the Motion of Defendant WorkHealth North to Dismiss Plaintiff's First Amended Complaint (ECF No. 10) is **GRANTED**. Plaintiffs claims for negligence, tortious interference with an employment relationship, intentional or negligent infliction of emotional distress, and punitive damages are **DISMISSED** as against WorkHealth. The Motion of Defendant WorkHealth North to Dismiss Plaintiff's Complaint is **DENIED** as moot in light of Plaintiff's First Amended Complaint and this Opinion and Order. (ECF No. 7.)

Plaintiffs' Motion to Amend the Complaint is **GRANTED** to the extent that Plaintiffs may pursue their cause of action against WorkHealth for breach of contract under a third-party beneficiary theory.  (ECF No. 12.)  The Clerk is **DIRECTED** to file Plaintiffs' Second Amended Complaint. (ECF No. 12-1.)

    **IT IS SO ORDERED.**

Date: August 18, 2011                                                                            /s/ *Elizabeth A. Preston Deavers*
                                                                                   Elizabeth A. Preston Deavers
                                                                                   United States Magistrate Judge